UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TAKIA COE

      Plaintiff,

-vs-

                                        Case No. 14-CV-00022

HOUSING AUTHORITY OF
THE CITY OF MILWAUKEE,

      Defendant.

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

       Takia Coe has moved for summary judgment on her federal claim, brought pursuant to 42 U.S.C. § 1983, that the decision by the Housing Authority of the City of Milwaukee (HACM) to terminate her eligibility for HACM's Housing Choice Voucher Program deprives her of rights protected by federal law. Specifically, the Housing Choice Voucher Program, colloquially referred to as "rent assistance," is funded through the United States Department of Housing and Urban Development and administered pursuant to federal statute and regulations by local public housing authorities (PHAs). In the current litigation, Ms. Coe's federally protected right is her right to have her eligibility determined by federal law, specifically, 42 U.S.C. § 1437d(k), and the implementing regulations for the Housing Choice Voucher Program, 24 C.F.R. Part 982.

       The past litigation about HACM's deprivation of Ms. Coe's federally protected rights is long, but the present chapter is now much simpler. In 2010, HACM started with a shot-gun barrel full of accusations against Ms. Coe covering allegations ranging back to 2007, 2008, and 2009, and 2010. Ms. Coe's first attempt, *pro se,* to dispute the accuracy of those allegations

resulted in a hearing constitutionally required by *Goldberg v. Kelly* and statutorily required by 42 U.S.C. § 1437d(k)(2). (Doc. 19 ¶¶ 20-21) In 2012, with Ms. Coe then represented by counsel in *Coe v. HACM,* Case 10-CV-915, Magistrate Judge Gorence adjudicated that HACM's 2010 notice violated the Due Process Clause and that such violations were HACM's custom of giving constitutionally defective notice. (PPFOF ¶ 2) Magistrate Judge Gorence ordered HACM to give Ms. Coe a new notice, and, if requested, a new hearing. (Doc. 19 ¶ 21)

The present federal litigation comes from HACM's 2012 attempt to terminate Ms. Coe's rent assistance eligibility based on the same purported wrong-doing from 2007, 2008, 2009, and 2010. HACM gave a four page notice of its accusations. (Doc. 19 ¶ 22) The *Goldberg v. Kelly* hearing was held on two different dates, concluding January 10, 2014, producing a 333 page transcript. (Doc. 19, ¶ 24, PPFOF ¶ 51) The written decision from the *Goldberg v. Kelly* hearing was issued 10 months later on November 19, 2013. (PPFOF, ¶ 51)

The November 19, 2013 Decision greatly narrows the issues for the present motion for summary judgment in two specific respects. First, the November 19, 2013 Decision rejected HACM's claim that Ms. Coe's alleged failure to report income was fraudulent. (PPFOF ¶ 52) That determination removes HACM's reliance on "fraud" with respect to income reporting as a ground for terminating Ms. Coe's benefits. "Fraud" in the reporting of income is a ground permitted by federal regulations, 24. C.F.R. § 982.552(c)(1)(iv), to terminate rent assistance, but HACM's case failed on its evidence of fraud at the administrative hearing. (PPFOF ¶ 52). Rather, HACM's decision is now narrowed to whether its "two week/15 business day income reporting rule"[1] is a ground permitted by federal law to be the basis of termination of eligibility.

---

[1] As discussed in Heading C of the Undisputed Material Facts section of this brief, HACM claims it has at least two different income reporting rules. The rules are inconsistent with each other in a number of ways, but most obviously in the number of days for the claimed deadline in reporting changes in income. Ms. Loberg, the enforcement personnel who decided the grounds

2

The dispute in the present case with respect to Ms. Coe's reporting of her changes in income is a question of law: does the HUD regulation permit terminating rent assistance eligibility when income is reported and verified accurately through the HUD's annual re-certification process because the local housing authority has created a different procedure. As discussed below, it is undisputed that Ms. Coe provided all of the information requested during the HUD's annual re-certification process. In short, while fraudulent conduct in the reporting of income is one of the HUD-permitted grounds to terminate rent assistance, "tardy" reporting is not.

Second, with respect to the claimed violation by Ms. Coe of some rule regarding reporting changes in household composition, the November 19, 2013 Decision has focused HACM's position. The facts are most certainly disputed, but the November 19, 2013 Decision is grounded solely on a "fraud" theory. Indeed, with respect to Ms. Loberg's claims that Ms. Coe "confessed" to allowing multiple people stay in her home in early 2010, there are disputes of fact as to the substance of the "confession," Ms. Loberg's backdating of the evidence of the "confession," and the destruction, while in HACM's possession, of the original documents of the purported "confession." Those disputes are not however, material because even if one believes Loberg, HACM's "fraud" theory fails. It is undisputed that HACM failed to present any evidence that Ms. Coe made a representation, knowing to be false, with intent to deceive HACM. It is undisputed that HACM failed to claim or prove that the purported "family members" had income. HUD requires both elements.

Ms. Coe's federal claim, thus, comes down to a syllogism: (1) she has a federally protected right to be terminated only for reasons allowed by the federal regulations; (2) the

on which to terminate Ms. Coe's eligibility, initially testified that she applied the "two week" rule, but then changed her testimony as to claim that she applied the "15 working day" rule. (PPFOF ¶ 13) Ms. Loberg's understanding of what income must be reported under HACM rule (whether two weeks or 15 working days) is also different from her supervisor's understanding of the same rule(s) and from the HUD definition of income. (PPFOF ¶¶ 12, 14)

federal regulations do not include any of HACM's income change reporting deadlines (whichever one HACM decides is its "rule") as a grounds from termination; (3) as to persons HACM deems to have been temporary residents of the household (a disputed fact), there is no fraud where there is no claim that the temporary residents had income (an undisputed fact).

## UNDISPUTED MATERIAL FACTS

A.   **Undisputed Facts Regarding HUD's Eligibility Certification Process, Definition of "Annual Income," and Permitted Grounds for Terminating Eligibility In the Housing Choice Voucher Program.**

HUD requires public housing authorities to review the income and household composition of participating households at least annually. 24 C.F.R. § 982.516. At any time, the public housing authority may conduct an interim examination. 24 C.F.R. § 982.516(b)(1). At any time, the family "may request an interim determination of family income and composition because of any changes since the last determination." 24 C.F.R. § 982.516(b)(2). If the family requests an interim determination, the public housing authority "must make the interim determination within a reasonable period of time." 24 C.F.R. § 982.516(b)(2).

Every reexamination is an extensive, time consuming process, whether the annual reexamination, a PHA initiated interim reexamination, or a family requested interim reexamination. For every reexamination the PHA "must obtain and document in the tenant file third party verification, or document why third party verification was not available of (i) reported family annual income, (ii) the value of assets, (iii) expenses related to deductions from annual income, and (iv) other factors that affect the determination of adjusted income." 24 C.F.R. 982.516(a)(2).

Annual examinations do not determine current income; they project the annual income of a participant family's for next 12 months. HUD requires public housing authorities to

4

"annualize" income prospectively, unless the housing authority selects a shorter period at which it will make a redetermination of income. 24 C.F.R. §§ 5.609(a)(2), 5.609(d). Public Housing Authorities are not, however, permitted to consider all income in the prospective projection of "annual income." Seventeen categories of income are excluded from the definition of annual income. 24 C.F.R. § 5.609(c) At least six types of earned income are specifically excluded, as well as all income, earned or not, that is "temporary, nonrecurring, or sporadic." 23 C.F.R. §§ 5.609(c)(1), (5), (7), (8)(iv), (8)(v), (9), (11).

There are two potential grounds in the federal regulations for terminating rent assistance eligibility that are related to reporting of income and recertification. One is if "a family member has committed fraud, bribery, or other corrupt act in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(1)(iv). HACM's July 10, 2012 "Important Notice Regarding Continued Eligibility" invokes this ground. (PPFOF ¶ 47) The November 19, 2013 Decision, however, determined that there was no fraud with respect to any aspect of income reporting. (PPFOF ¶ 52) The second potential ground for terminating rent assistance eligibility permitted by the federal regulation is the incorporation by 24 C.F.R. § 982.552(c)(1)(i) of the "family obligation" stated in 24 C.F.R. § 982.551(b)(2): "The family must supply any information requested by the Rent Assistance Program or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements." HACM's July 10, 2012 "Important Notice Regarding Continued Eligibility" invoked the providing of information during annual or interim reexamination ground. (PPFOF ¶ 47) There is no dispute, however, that Ms. Coe did provide all information requested during each of her reexaminations. The November 19, 2013 Decision explicitly so finds: "It is undisputed that Coe had her annual reexamination scheduled for April 7, 2009, less than two

5

months from her first day of employment with Precious Transit. Ms. Coe did nothing to hide the increase in her income at the annual reexamination, but she did fail to report that income in a timely manner pursuant to the rules promulgated by HACM." (PPFOF ¶ 53) It is undisputed that Ms. Coe did not violated **HUD's** rule. The finding is that HACM's "two week/15 working day" deadline was missed.

**B.      Undisputed Facts that HACM Has, By Policy, Created Multiple "Grounds" For Terminating Rent Assistance Eligibility That Are Not Grounds for Termination Permitted by HUD Regulations.**

Section 21 of the HACM's Administrative Plan is entitled "Reasons for Denial and/or Termination of Assistance to the Family." (PPFOF ¶ 5)   Section 21.0 is one sentence that reads RAP "may at any time deny or terminate program assistance for an application or participation because of any of the following actions or inactions: [a list of 23 paragraphs letter A-W follows]" The language is identical in both versions.

The grounds for termination in Section 21 of HACM's Administrative Plan are, for the most part, permitted by the federal regulations. Table 1 shows which sections of the federal regulations authorize (at least in part) which sub-paragraphs of Section 21 of the HACM's Administrative Plan.  With respect to participants in the Rent Assistance Program, federal regulations authorize the grounds contained in the Administrative Plan with the exception of sub-paragraph K.[2]

---

[2]  Sub-paragraphs Q, R, S, T, U, V, and W of Section 21 of HACM's Admin Plan apply only to the denial of applications, not to termination of eligibility of participants, such as Ms. Coe.  They appear to be authorized, at least by implication, by the HUD regulations dealing with grounds for denying applications.

6

| TABLE 1 – Comparison of Admin Plan to Federal Regulations | | | |
|---|---|---|---|
| Admin Plan § 21 ¶ | 24 CFR § | Admin Plan § 21¶ | 24 CFR § |
| A | 982.552(c)(1)(i) | I | 982.553(b)(1)(iii) for drug related; 982.553 (b)(2) for violent criminal activity. See also 982.551 |
| B | 982.552(c)(1)(I)/ 982.551(a)(3) re SSN, (b)(1) re citizenship, and 982.551(b)(2) re supplying information in annual or interim examinations | J | 982.551(m) |
| C | 982.552(b)(4) | K | [There is, no longer, a permitted "fugative felon" grounds.] |
| D | 982.552(b)(2) | L | 982.552(c)(1)(iv)/ 982.551(k) |
| E | 982.553(b)(1)(i)(A) | M | 982.552(c)(1)(v) |
| F | 982.553(b)(1)(i)(B) | N | 982.552(c)(1)(vi) |
| G | 982.553(b)(1)(ii) | O | 982.552(c)(1)(vii) |
| H | 982.553(a)(2)(i) for applicants only | P | 982.552(c)(1)(ix) |

Significantly, HACM's "income" reporting rule – whether it is the "two week rule" of Hearing Exhibit 5 or the "15 working day rule" of Hearing Exhibit 18 -- are **not** in the federal regulations as grounds for termination of assistance. (PPFOF ¶ 6)

Many of HACM's "YOU WILL BE TERMINATED" rules in Hearing Exhibit 5 are not permitted by federal regulations as grounds to terminate rent assistance eligibility. (PPFOF ¶ 4)

For example, HACM asserts in Hearing Exhibit 5 that "you" will be terminated if "you move out from your contracted unit without written permission from the program." The federal rule, however, 24 C.F.R. 982.551(i), simply requires that the family "promptly notify the PHA of absence from the unit" and "supply any information or certification . . .relating to family absence from the unit, including any PHA requested information or certification on the purposes of family absences." Also, 24 C.F.R. § 982.551(f) requires notice, but not approval, before moving out or terminating a lease. Thus, if, hypothetically, a unit was damaged by fire, the federal regulations allow the family to make accommodation arrangements and move out, so long as the family notifies the PHA. Under HACM's "rule," the family is terminated if it did not stay in the unit until HACM consents in writing, however long that takes. (PPFOF ¶ 4) Similarly, HACM purports to have a rule terminating eligibility for "allowing others to use your unit as a mailing address." Neither Section 21 of the Administrative Plan, nor the federal regulations contain such a provision. (PPFOF ¶ 5)

Table 2 summarizes the divergence of HACM's "YOU WILL BE TERMINATED" "rules" (Hearing Exhibit 5 (Document 13-5)) from the grounds for termination stated in Section 21 of the Administrative Plan (Document 13-21, pages 22-24, Document 13-22, pages 1-3) and from the grounds for termination of rent assistance eligibility permitted by the federal regulations

:

| TABLE 2: Comparing Exhibit 5 to HACM's Administrative Plan and Federal Regulations | | |
|---|---|---|
| Hearing Exhibit 5 (Document 11-1, page 10) | Admin Plan § 21 (Document 11-1 page 86-88, 89-91) | 24 C.F.R. § |
| Move without written consent | None | "promptly notify" and supply information relating to absence. § 982.551(i) |
| 48 hours to give notice of service of "notice to vacate and/or an eviction" and "bring a copy of the writ" within 48 hours | ¶ D: **eviction** for "serious violations of the lease" No provision on service of notice to vacate or | § 982.552(b)(2) |
| Side payments to landlord | None | None, although the HAP contract with landlord may be terminated for the landlord's breach in accepting a side payment. §982.453(a)(1); 982.451(a) (4)(ii) |
| "Two week" income reporting rule | None | None |
| Falsify any information, including birth certificates, SSN, income and or any other documents" | ¶ L | § 982.552(c)(1)(iv); 982.551(k), The language is "commit fraud," language clearly covering falsified documents. |
| Unauthorized persons not listed on contract living in household or using unit as a mailing address | None | No provisions on mailing address. Disclosure during annual certification implied by 981.551(a)(2) |
| Violent criminal or drug related criminal activity | ¶ E,F,G,H | §§ 982.553(b)(1)(i), (ii), (b)(2), (b)3), 982.551(m) |
| utilities disconnected, and/or failure to stay current on water or sewer bill. | None | None |

**C.     Undisputed Facts Regarding HACM's Multiple, Inconsistent Rules on Reporting Changes in "Income."**

HUD defines income as "annual income," amounts which go to or on behalf of, the family head or to any other family member, or are "anticipated to be received" during the 12 month period following the annual recertification, and are not one the many classes of income that are specifically excluded from the definition. 24 C.F.R. § 5.609(a). Annual income does not include, among others, "temporary, nonrecurring or sporadic income (including gifts)," earnings in excess of $480 for each full-time student 18 years or older, income from employment of children under the age of 18 year, and income from a live-in aide. 24 C.F.R. § 5.609(c).

HACM's has multiple, inconsistent, income reporting rules. It has at least two different **written** rules. They cannot be reconciled because one requires reporting changes in income (increases or decreases) within "two weeks." (PPFOF ¶ 11) The other, requires written reporting income increases (but not decreases) within "15 working days." (PPFOF ¶ 11) There is no logical way to reconcile a "rule" that says the "writing" must be provided in "two weeks" with a "rule" that says it must be done in "15 working days."

Further, HACM's two different "rules" differ on what changes in income must be reported. The "two weeks" rule purports to require reporting both increases and decreases in income. (PPFOF ¶ 11). The "15 working day rule" requires reporting only of increases in income. (PPFOF ¶11). Neither the "two weeks rule" nor the "15 working day rule" addresses reporting changes in the **source** of income. (PPFOF ¶ 12) Finally, neither the "two weeks rule" nor the "15 working days rule" say whether sporadic income (like gifts), or temporary income (like temporary employment), or non-recurring (like litigation judgments) or *de minimus* increases (like overtime) must be reported, since, as discussed above, none of those types of remuneration are even "income" under the federal regulations.

10

It is undisputed that HACM's own enforcement staff does not understand which "rule" they are to apply. (PPFOF ¶ 13)  Originally, in 2011, Ms. Loberg testified that all changes in income must be reported within 14 calendar days. (PPFOF, ¶ 13)  By 2013 she changed her testimony that it was the 15 working day rule she applied in 2010 while conducting the income investigation of Ms. Coe; it is undisputed that she changed her testimony (PPFOF, ¶¶ 13-14 ).

As stated above, HUD does not include sporadic and nonrecurring sources of income as "annual income," and therefore excludes this income.  *See,* 24 C.F.R. § 5.609(b).  Yet, HACM enforcement staff requires that sporadic income be reported pursuant to its income reporting rule. (PPFOF, ¶15).  HACM's enforcement staff gives inconsistent statements on what "income" must be reported.  (PPFOF, ¶ 15).  Ms Loberg, of the enforcement staff, believes that income as sporadic as one week must be reported with the income reporting rule timeframe, whether that is 14 calendar days, or 15 business days.  (PPFOF, ¶¶¶ 13-15).  Her supervisor, Mr. Assefa Damte, does not believe so, but understands the rule to be whether and when sporadic income is to be reported is up to the discretion of the certification supervisor.  (PPFOF, ¶ 15).

In Ms. Coe's case, the Notice of Continued Eligibility alleges that she did not report income from 2008-2009.  (Doc. 19, ¶ 22).  However, Ms. Coe met with her recertification worker in 2009 in April for her annual recertification.  (Doc. 19, ¶ 4).  During her annual recertification meeting, her certification worker had the EIV report indicating Ms. Coe's employment history from 2008.  (PPFOF, ¶ 26).  Ms. Coe was re-certified in 2009; HACM did not enforce its "rule" until a year later. (PPFOF ¶¶ 27-28)

**D.  Undisputed Facts With Respect to HACM 2012 Notice of Alleged Grounds to Terminate Eligibility and the November 19, 2013 Informal Hearing Decision.**

The Important Notice of Regarding Continued Eligibility (Doc 13-1) lists 6 grounds for proposed termination.  (PPFOF ¶ 47).  The Notice cites only two federal regulations: (1) the

"fraud, bribery or any other corrupt act" provision in 24 C.F.R. § 982.552(c)(1)(iv), and (2) HUD's "family obligation," duty described in 24 C.F.R. § 982.551(b)(2) to supply "any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim examination of household income and composition." (PPFOF ¶ 47)

The Notice (Doc 13-1) cites four other alleged grounds for terminating eligibility. (PPFOF ¶ 48)  The first is HACM's 15 business day rule. HACM does not attribute that ground to any federal regulation. (PPFOF ¶ 48)  Second, HACM's Notice cites from the HUD Voucher that a family "must promptly notify the PHA in writing if a family member no longer lives in the unit." The Notice does not suggest which family member HACM claimed no longer lived with Ms. Coe in the unit.  (PPFOF ¶ 48)  Finally, HACM's Notice cites two make weights: HUD's voucher language that information submitted by truthful and complete and some agency circulars about recovering overpayments.  (PPFOF ¶ 48)  None of the listed grounds claim that any alleged "household members" had any income to be reported.  (PPFOF ¶ 49)  The Notice does not allege a violation of HUD's Housing Qualty Standard, 24 C.F.R. § 982.401. (PPFOF ¶ 50)

The November 19, 2013, Decision makes no finding that Ms. Coe committed fraud in reporting or not reporting her income.  (PPFOF ¶ 52)  The Decision found that Ms. Coe violated HACM's "15 working day" rule in reporting her income from Precious Transit, but specifically found that Ms. Coe did not commit fraud with respect to the reporting of Precious Transit (PPFOF ¶ 52)  The findings are that Ms. Coe "did nothing to hide that increase in her income at the annual reexamination, but she did fail to report that income in a timely manner pursuant to the rules promulgated by HACM." (PPFOF ¶ 53).

Nor does the November 19, 2013, Decision find that Ms. Coe failed to supply all information requested for use in the 2009 annual recertification.  (PPFOF ¶ 54)  Although there

12

is a discrepancy between the claims of Ms. Loberg and the documentary evidence on exactly when HACM received the first information about Ms. Coe's employment at Precious Transit, there is no dispute that HACM received the information during Ms. Coe's 2009 recertification process. (PPFOF ¶ 24) It is undisputed that Ms. Coe started her employment with Precious Transit on February 17, 2009. (PPFOF ¶ 23) It is undisputed that Ms. Coe's recertification notice from HACM, including the Personal Declaration form, was sent on February 19, 2009. (PPFOF ¶ 21) It is undisputed that the February 19, 2009 notice set her recertification appointment for seven weeks later, on April, 7, 2009. (PPFOF ¶ 21) It is undisputed that Personal Declaration Form instructs recipients to submit the form at the recertification appointment. (PPFOF ¶ 22) Ms. Coe reported her new Precious Transit income on her personal declaration form that she completed on March 29, 2009 in preparation for her annual recertification meeting. (PPFOF ¶ 24) HACM received the Precious Transit Employer's Statement verifying the amount of her projected annual income on March 30, 2009. (PPFOF ¶ 25) There is no dispute that Ms. Coe was recertified as a result of spring 2009 annual reexamination.

## E. Disputed and Undisputed Facts With Respect to Allegations of Occupancy

It is undisputed that on April 19, 2010 a meeting was held as a result of an accusation made by Javon Lattimore, the then teenage boyfriend of Ms. Coe's teenage daughter. (PPFOF ¶ 29) Mr. Lattimore was angry Ms. Coe because Ms. Coe was forbidding him from coming over to her house. (PPFOF ¶ 29) Ms. Coe's daughter confirmed that she too was mad at Ms. Coe for preventing Mr. Lattimore from seeing her and their child. (PPFOF ¶ 29) Mr. Lattimore falsely reported to HACM the other people were living with Ms. Coe. Mr. Lattimore later told HACM his allegation was false and that the people visited, but did not live with Ms. Coe. (PPFOF ¶ 30)

13

It is undisputed that Ms. Coe was first questioned about the composition of her household in a meeting conducted on April 19, 2010. (Doc. 19, ¶ 11). The content of the meeting is very much disputed, but, as discussed below, those disputes are, for purposes of this motion, not material. It is undisputed that Loberg created a memo purporting to memorialize the April 19, 2010 meeting. (PPFOF ¶ 32) The date of the creation of the memo is disputed. Loberg claims to have created it contemporaneously. (PPFOF ¶ 33) The metadata for the document, however, indicates that the memo was created and printed on May 13, 2010, not April 19, 2010. (PPFOF ¶ 34) Ms. Loberg acknowledged that the metadata appeared to be related to the memo, that she typed the memo on the City of Milwaukee system, and that she printed it. (PPFOF, ¶ 35). The metadata for the memo, contained in Hearing Exhibit 55, shows that the document was created at 8:38 am on May 13, 2010, by author "jlober," who Ms. Loberg acknowledged was herself, was revised three times, was last saved and last printed on May 13, 2010 at 9:34 a.m. (PPFOF ¶ 36).

Ms. Loberg's testimony was disputed at the first hearing by the very people involved, specifically Ms. Portis, Mr. Lattimore, and Mr. Portis and by Ms. Coe's testimony. (PPFOF ¶ 43) At the second hearing Ms. Loberg's version is contradicted again by Ms. Coe's testimony. (PPFOF, ¶¶ 44-46).

Whether Loberg's memo is contemporaneous or prepared for the litigation purpose of defeating Ms. Coe's May 12, 2010 appeal is a significant dispute of fact. There are other indicia of fabrication in the memo. In the memo, Loberg got the date of Lowe/Portis eviction wrong. (PPFOF ¶ 37) The memo got the name of Dante Portis's sister wrong. (PPFOF ¶ 38) The memo got the relationship of Tamish Portis to Dante Portis wrong. (PPFOF ¶ 38) Most importantly she got wrong whether Dante Portis or Tamish Portis/Lowe resided in her unit.

One could draw the inference that Ms. Loberg created a backdated and supposedly contemporaneous memorandum, creating it, not coincidentally the day **after** Ms. Coe requested a hearing on the proposed termination, realized that the backdated memorandum contained obvious errors, and attempted to cover-up the errors.

Additionally, the originals of the handwritten notes contained on the CCAP printout have been lost by HACM. (PPFOF, ¶ 40). This is significant because the handwriting on the copy of the CCAP printout looks like it was written with two different pens, and the only way to ascertain this assumption is by examining the original which is now gone. If the handwriting was proved to be different it would support the theory that Ms. Loberg was creating false evidence by writing information on the CCAP printout *after* the meeting with Ms. Coe.

**ARGUMENT**

Entity liability under 42 U.S.C. § 1983 attaches to HACM because HACM's "two week/15 working day" income reporting "rule" is a classic policy or custom of HACM under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Whether the termination of eligibility policy is that stated in Hearing Exhibit 3 (Document 13-3) or the slightly different policies stated on the two pages of Hearing Exhibit 18 (Document 13-18), the result is the same. HACM  has executed its policy decision to terminate a participant's rent assistance eligibility for reasons not permitted by the HUD regulations.  Its decision to terminate rent assistance eligibility for "tardy" income reporting, as defined by its local policy (whichever it is), in the absence of fraud under 24 C.F.R. § 982.552(c)(1)(iv) or failure to provide information requested during the annual certification process, establishes a "fixed plan() of action to be followed under similar circumstances consistently and over time." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  Municipal organizations may be liable under § 1983 even if the custom or practice is not formally adopted. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Here the evidence is undisputed that HACM is acting pursuant to written statement of HACM's general operating procedure. Further, although the policy of terminating rent assistance eligibility for tardy income reporting is not in Section 21 of the Administrative Plan (Document 13-22) containing the explicit grounds for termination of eligibility, a municipal custom or practice may provide a basis for liability even if it conflicts with the municipal organization's formally stated policies. *See, e.g., Wetzel v. Hoffman*, 928 F.2d 376, 378 (11th Cir. 1991).

16

I.     **The Truthful and Timely Reporting of Income Sources and Amount During The Annual Certification Process Using the PHA Process and Timetable Cannot be a Grounds to Terminate Program Participation.**

   A.     **The federal regulations specify the exclusive grounds for which a § 8 participant may be terminated.**

Section 982.552 of Title 24 of the Code of Federal Regulations is titled "PHA denial or termination of assistance for family." As to grounds for denial or termination because of the conduct of the assisted family, 24 C.F.R. § 982.52 is explicit that the grounds for termination are contained in either § 982.552 or 982.553:[3]

> (a)(1) a PHA may deny assistance for an applicant or terminate assistance for a participant under the programs because of the family's action or failure to act as described in this section or § 982.553. The provisions of this section do not affect denial or termination of assistance for grounds other than action or failure to act by the family.

Subsection (a)(2) specifies the ways an applicant may be denied assistance; and (a)(3) specifies the ways assistance may be terminated. Subsection (a)(4) states that § 981.552 does not limit or affect the PHA's rights or remedies against the landlord under the housing assistance payments contract.

Paragraph 982.552(b) contains the five grounds for which PHAs **must** terminate or deny assistance, none of which has been invoked by HACM in this case. Paragraph 982.552(c) contains the grounds for which PHAs **may** terminate assistance or deny an application. The "fraud, bribery, or other corrupt conduct" provision is § 982.552(c)(1)(iv). The "family obligations" ground is § 982.552(c)(1)(i), but the definition of "family obligation" is § 982.551, and the sole "family obligation" invoked by HACM is the failure to supply information requested for use in the annual certification in § 982.551(b)(2). Paragraph 982.552(d) imposes

_____

[3] Section 982.553 deals with criminal and drug or alcohol abuse grounds for rent assistance eligibility termination. HACM has not invoked it in any manner in this case.

on the PHA the duty of disclosure of (1) "family obligations under the program," (2) "the grounds on which the PHA may deny or terminate assistance because of family action or failure to act," and (3) the informal hearing process.

PHAs have a great deal more discretion in denying an application than in terminating a current participant. Paragraph 982.552(e) permits application denial (as opposed to termination) of assistance "in accordance with the PHA policy, as stated in the PHA administrative plan, on screening of applicants for family behavior or suitability for tenancy." 24 C.F.R. § 982.552(e). There is no similar provision with respect to termination of current participants.

Both Wisconsin state appellate courts and federal courts have recognized the grounds a PHA may use to terminate assistance are limited to the grounds permitted by federal law and that there is a distinction between the grounds for which a PHA may terminate assistance and the grounds for which the PHA may deny assistance to a new applicant. *Williams v. Integrated Community Services*, 2007 WI App, 159, 303 Wis. 2d 697, 736 N.W.2d 226 (federal grounds for denial of assistance for conduct of household member did not permit denial of assistance for conduct of a "guest," as defined by federal law); *Ellis v. Ritchie*, 803 F. Supp. 1097, 1104-05 (E.D. Va. 1992)(unintentional mistakes during annual recertification process were not violations of "family obligations" where information was supplied during the process; failure to disclose was not "fraud" under former regulation);[4] *Hill v. Richardson*, 740 F. Supp. 1393, 1398-99 (S.D. Ind. 1990) (noting that the Section 8 regulations provide the exclusive list of grounds on which assistance may be terminated), denial of attorneys' fees vacated 7 F.3d 656 (7th Cir. 1993); *Cain*

---

[4] *Ellis* was decided under the former regulatory provisions on "family obligations," which were, at the time, in 24 C.F.R. § 882.18. The federal regulations have since been significantly modified and completely renumbered. The current section on "family obligations" is 24 C.F.R. § 982.551, not former 24 C.F.R. § 882.18. For the proposition that federal regulations control the grounds on which benefits may be terminated, *Ellis* is still good law.

*v. Allegheny County Hous. Auth.*, 986 A.2d 947 (Pa. App. 2009)(PHA may not terminate participant for not obtaining PHA's permission to move because obtaining permission is not a federally permitted ground to terminate).

Some courts permit local PHAs to set an objective standard in their administrative plan for implementing a permitted federal ground, so long as the objective standard is not inconsistent with the permitted federal ground. See, *e.g., Eddings v. Dewey*, 2006 U.S. Dist Lexis 74373, 2006 WL 2850646. *aff'd,* 261 Fed. Appx. 638 (4th Cir. 2008)(30 day time period to report family member no longer resides in the unit is consistent with 24 C.F.R. § 982.551(h)(3) provision that a "family obligation" includes "prompt notif[ication] if any family member no longer resides in the unit."); *Ritter v. v. Cecil County Office of Hous. & Community Dev.* 33 F.3d 323, 328 (4th Cir. 1994)(local "two week guest" rule permitted under former regulation 24 C.F.R. § 882.118(a)(5))[5]

> **B.**    **HACM presented no evidence that a violation of its "income" reporting "rule" [whether the "two weeks" rule or the "15 working days" rule] violates any federal regulation that is a basis for terminating benefits or that it applied during the annual recertification process.**

HACM's Decision to uphold Ms. Coe's eligibility termination based on a failure to timely report her Precious Transit employment cannot be sustained on any federally permitted ground to terminate Housing Choice Voucher Program eligibility. First, it cannot be sustained under the 24 C.F.R. § 982.552(c)(1)(iv) ground of "fraud, bribery, or other corrupt act" because HACM's case fails on the facts. HACM cannot argue, in light of the administrative hearing decision that there was "fraud" in connection with reporting income. The November 19, 2013

---

[5]  As discussed below in the discussion of the current federal regulation on household composition, the "family obligations" section for participants is now 24 C.F.R. § 982.551 and has been dramatically revised since the time of the *Ritter* decision.

Decision expressly and repeatedly finds that there was no fraud with respect to Ms. Coe's income. (PPFOF ¶ 52)

Nor can the termination be sustained on the "family obligation" ground. The "family obligation" HACM alleged is the duty "to supply any information requested by the Rent Assistance Program or HUD for use in any regularly scheduled or interim reexamination of family income and composition in accordance with HUD requirements." (PPFOF ¶ 47) If HACM had proved that Ms. Coe failed to "supply any information requested . . . for use in any regularly scheduled or interim reexamination of family income," it would have a ground permitted by federal law. The undisputed facts, however, are that Ms. Coe did supply the information requested for the regularly scheduled reexamination on or before the April 9, 2009 recertification appointment date deadline at which she was informed by on the Personal Declaration form. (PPFOF ¶¶ 22-25) The undisputed fact is that Precious Transit had verified Ms. Coe's income in the fax transmittal dated March 30, 2009, more than a week before the April 7, 2009 recertification appointment date deadline. (PPFOF ¶ 25) Ms. Coe complied with the HUD regulation by supplying the information requested before the time requested.

## II. In the Absence of Proof of Either a HQS violation or monetary benefit to Ms. Coe, the number of people sleeping in a contracted unit is not a federally accepted ground to terminate participation.

### A. HACM's Notice claimed ground for terminating with respect to household composition only gives reasonable notice that HACM is claiming either unreported income from the purported household members or a violation of HUD's Housing Quality Standard, neither of which was proved.

Section 8 rent assistance is a property interest protected by the Due Process Clause of the Fourteenth Amendment. *Simmons v. Drew*, 716 F.2d 1160 (7th Cir. 1983); *Chesir v. Housing Authority of the City of Milwaukee*, 801 F. Supp. 244, 1992 U.S. Dist. LEXIS 13951 (E.D. Wis. 1993); *Lowery v. Dist. of Columbia Housing Authority*, 2006 U.S. Dist. LEXIS 13319 (D.D.C.

20

March 14, 2006); *Edgecomb v. Housing Auth. of Vernon*, 824 F . Supp. 312 (D. Conn. 1993);

*Pratt v Housing Authority of the City of Camden*, 2006 U.S. Dist. LEXIS 70575 (D.N.J. Sept. 27,

2006); *Gammons v. Mass Dep't of Hous. and Comm. Development*, 523 F. Supp. 2d 76 (D.

Mass. 2007).  The irreducible core principle is notice reasonably calculated to inform so that the

opportunity to be heard is meaningful. The most fundamental requirement of due process in any

proceeding which is final in nature is a notice "reasonably calculated" to inform interested

parties of the "pendency of the action" which "conveys the required information." *Mullane v.*

*Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652 (1950).  Twenty years later

this principle was applied to need-based public assistance termination reviews in the Supreme

Court's seminal due process decision in *Goldberg v. Kelly*, 397 U.S. 254, 267, 25 L. Ed. 2d 287,

90 S. Ct. 1011 (1970).  The same requirements are statutory for all programs administered by

public housing authorities.. 42 U.S.C. § 1437d(k)(1) ["advised of the specific grounds of any

propoed advers public housing agency action], § 1437d(k(2) ["opportunity for a hearing before

an impartial party upon time request"]

The Notice in this case (Doc. 13-1) is silent on which specific ground HACM is

invoking. To the extent HACM tied any of its allegations with respect to the disputed facts

surround purported unauthorized residents, it was that the presumed authorized residents Ms.

Coe allegedly "did not have their income included in the monthly tenant portion that is based on

household income" and "You also created an unsafe environment by allowing numerous

household members to reside in a unit that was too small for your actual size." (Doc 13-1, page

4)  HACM did not, however, attempt to prove that the supposedly unauthorized household

members had **any** income, that Ms. Coe failed to provide any information requested by HACM

for a recertification examination that would include the purported household members, or that the purported presence of the household members violated HUD Housing Quality Standard.

**B.     HACM's decision cannot be sustained as a determination of "fraud" because there was no evidence of intentional misrepresentation of income or family composition.**

To sustain an accusation of "fraud," HUD requires both an intent to deceive and pecuniary gain. HUD has both a regulation and an administrative guidance on its use of the word "fraud." "Fraud" is "a single act of pattern of actions: (1) [t]hat constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) that results in payment of section 8 program funds in violation of section 8 program requirements." 24 C.F.R. § 792.103.

On the intent to deceive prong, HUD's administrative guidence, The Housing Choice Voucher Program Guidebook,[6] identifies a number failures to report information that are not "fraud." HUD describes the following as not "fraud"

> "Failure to report required information due to lack of understanding, such as omitting a particular asset or failing to report a source of income;"
>
> Incorrect reporting, such as reporting the income source but incorrectly stating the amount of income.
>
> Failure to report changes as required such as failure to notify the PHA of a change in family composition or income."

(Petty Affidavit, Exh D) According to HUD's interpretation of its own programs, a failure to report can be intentional and still not be fraud.

> This chapter uses the terms "error and "omission to identify situations in which a family or owner does not comply with program requirements or staff members incorrectly apply program rules. An error or omission may e

---

[6] The entire Housing Choice Voucher Program Guidebook is available at
http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/forms/guidebook
(last visited November 5, 2014). For convenience, a hard copy of Chapter 22 entitled "Program Integrity is attached to Attorney Petty's affidavit.

intentional or unintentional. Some will affect family payment and subsidy amounts; others will not.

(Petty Affidavit, Exh D)  Even if one accepts for purposes of the motion for summary judgment only Loberg's claims of Ms. Coe's April 9, 2010 "confession" that the Portis/Lowe had lived with Ms. Coe since November (or January, depending on which version of Loberg's evidence is to be credited), it is at most an omission under HUD's Guidebook.  Even construed as an intentional omission, it is not fraud. It is exactly what HUD describes as a non-fraudulent "failure to report changes as required, such as failure to notify the PHA of a change in family composition or income." (Petty Affidavit, Exh. D)

HACM's "fraud" theory also falters under HUD's interpretation on the pecuniary gain prong.  HACM did not request in interim examination, as it could have done, to require the "household" to supply HACM with information to be used in the interim examination. 24 C.F.R. § 982.551 (b)(2). Because HUD requires PHA to annualize income prospectively, one cannot infer that the Lowe/Portis group, who had, it is undisputed, just been evicted, had any income to "annualize."

At least one federal district court has interpreted the meaning of fraud within the context of Section 8 housing assistance participation as "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation." *Holly v. Housing Authority of New Orleans*, 684 F.Supp 1363, 1368 (E.D. La. 1988), quoting, *Nader v. Allegheny Airlines*, 626 F.2d 1031, 1036 (D.C.Cir. 1980).  In *Holly* the failure of a rent assistance recipient to inform the PHA of her short lived marriage was not "fraud."

23

### C.     A Violation of HQS Standards Would Be a Federally Acceptable Ground to Terminate, but HACM Neither Alleged nor Proved A HQS Breach.

Although the facts are disputed, the Court may assume that Loberg's representation of the Ms. Coe's "confession" is true for purpose of this motion. Under 24 C.F.R. § 982.551(c), it is a sufficient ground to terminate eligibility if a breach of HUD's HQS standards "caused by the family as described in 24 C.F.R. § 982.404(b)"

There are three fatal defects to HACM's argument, if it were to make it.  First, HACM never alleged in its Notice (Document 13-1) that of an HQS violation occurred. Before a PHA may rely on a particular legal standard to make an adverse decision, it must identify the legal standard.  *Bratcher v. HACM,* 2010 WI App. 97 ¶ 23, 327 WIs. 2d 183, 787 N.W.2d 418. Second, HACM did not prove that Ms. Coe or any member of her family caused a breach of the HQS standards.  *See,* 24 C.F.R. § 982.404. Third, by the language of 24 C.F.R. 982.404(b)(2), the assisted family is permitted 30 days to correct the HQS breach it caused.

### CONCLUSION

For the reasons stated about, the court should grant plaintiff's motion for summary judgment reversing the November 19, 2013 Decision.

Dated this 5th day of November, 2014.

Respectfully submitted,

s/ Erika Jacobs Petty
Erika Jacobs Petty
State Bar No. 1059488
ejp@legalaction.org
(414) 278-7777 x. 3008

s/Jeffery R. Myer
Jeffery R. Myer
State Bar No. 1017339
jrm@legalaction.org
(414) 278-7777 x. 3042

Legal Action of Wisconsin, Inc.
230 W. Wells Street
Milwaukee, WI 53203
Attorneys for Plaintiff – Takia Coe