UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TAKIA COE,

    Plaintiff,

v.                                                      Case No.:    14-CV-22

HOUSING AUTHORITY OF
THE CITY OF MILWAUKEE,

    Defendant.

**DEFENDANT'S SUMMARY JUDGMENT REPLY BRIEF**

Defendant, Housing Authority of the City of Milwaukee (HACM), has moved for summary judgment seeking dismissal of all claims and causes of action filed by the plaintiff, Takia Coe (Coe). Coe responded and opposed that motion. HACM submits this summary judgment reply brief, pursuant to Civil L.R. 56 and F.R.C.P. 56, in further support of its motion.

## **INTRODUCTION**

Coe's response brief consists of two sections. *Document 29*. In the first section, Coe challenges the significance of HACM's statement of the case, its recitation of the procedural history and those facts HACM believes are relevant to consider in dismissing her lawsuit. *Id.,* at pp. 1-13. Coe's arguments against the introductory section of HACM's brief reappear throughout her response brief. *Id.*

The second section of Coe's response contains her actual argument opposing HACM's motion for summary judgment. *Id.,* at pp. 13-31. That section of the brief can be further broken into two subparts: whether she has a viable civil rights claim under §1983, and whether the hearing examiner's decision, terminating her rent assistance, must be affirmed under state law

certiorari review. *Id.*

Despite Coe's effort to quarrel with the truth, Coe no longer has any standing/position in HACM's rent assistance program. Almost two years ago, Coe made a choice to voluntarily "port" to the City of West Allis' rent assistance program – an action she took before she even commenced this litigation. West Allis is now paying her rent assistance. No decision by this court will impact Coe's entitlement to rent assistance from West Allis.

Coe filed this lawsuit on speculative grounds. Coe speculates that if she decides to move in the future, the decision at issue in this lawsuit may affect her ability to receive benefits. This forces this court to presume that Coe will continue to be eligible for rent assistance, will move, and will be denied assistance in her new location. Coe's compliance with the West Allis program rules, her future employment, and her future financial situation may all impact whether Coe is even eligible to receive rent assistance at some indeterminate future point. Moreover, Coe offers no evidence that she plans to move from West Allis. Finally, Coe's speculation that other public housing authorities may use the HACM decision to deny her benefits didn't come to fruition in the City of West Allis, which certainly knew that Coe had been found to have violated HACM program rules, yet still decided to absorb her and keep her a participant in its program. *Document 33-3*, at p. 2; *Third Affidavit of Debra LaRosa*, at ¶ 3, Ex. 1.

As for the substantive arguments that Coe mounts in opposition to HACM's motion for summary judgment, she is wrong on the law and her effort to contort the facts does not rescue her claims. HACM may dismiss a participant who violates local rules implemented to effect the requirements of federal regulations. Coe's lawsuit must be dismissed.

2

# ARGUMENT

## I. ABANDONED CLAIMS

<u>Coe has abandoned any claim that HACM had a "custom" of issuing decisions that stray outside the corresponding notice, any "substantive due process" claim, and any claim that Wisconsin Statutes Chapter 68 somehow controls issues in this lawsuit.</u>

Within her response brief Coe admits that one of her due process claims is without merit. *Document 1*, at p. 10 (¶ 26(b)); *Document 29*, at p. 23. Coe concedes that HACM does not have a "custom" of issuing administrative decisions that are based upon reasons not set forth in the notices that question benefits and set hearings. HACM's motion for summary judgment must be granted on that claim.

Additionally, in its summary judgment motion, HACM showed that any substantive due process claim that Coe may have been asserting was not legally viable. *Document 21*, at pp. 24-26. Coe did not respond to that argument and, therefore, any claim based upon "substantive due process" has similarly been abandoned.

Finally, in its motion, HACM argued that Wisconsin Statutory Chapter 68 did not apply to the pending dispute. *Document 21*, at pp. 35-36. Again, Coe did not respond to that argument and any position to the contrary is abandoned.

## II. 42 U.S.C. § 1983 CIVIL RIGHTS CAUSE OF ACTION

Having abandoned the described claims, Coe instead focuses her argument in opposition to HACM's motion on her theory that she was terminated from HACM's program for violating local HACM administrative rules concerning a participant's duty to report interim income increases. Coe submits that termination for that reason finds no basis in federal regulations, and that HACM has multiple inconsistent rules, such that their terms are ambiguous. *Document 29*,

at pp. 13-22.  Coe is incorrect.

HACM's local income reporting rule is permissible
under the federal regulations because it enforces a family obligation.

Coe's assertion that there are inconsistent reporting rules is immaterial given the reasons for termination that are contained in the record. The notice that HACM provided to Coe, questioning her eligibility, only referenced her failure to meet the 15 business-day rule regarding interim-income reporting. *Document 11*, at pp. 3-4. Nowhere within that notice is there any citation, or even implicit reference, to Coe having to report income changes within a different period. *Id.* That document constituted the federally mandated notice that HACM must issue to apprise Coe of the bases for its decision to question her continued eligibility.

Coe's insistence that HACM has a two-week reporting rule (or inconsistent terms within other reporting rules) is irrelevant because no other standard was applied by HACM, nor considered by the hearing examiner. Coe raised the same argument at the administrative hearing, and the hearing examiner held that "Coe had 15 working days or three weeks to report any change in her income." *Document 11-2*, at p. 108; *Document 22*, at ¶ 98.[1]

Coe claims that former HACM employee, Jackie Loberg, testified that HACM enforced a two-week interim-income reporting requirement. No, she didn't. In the testimony that Coe cites, Loberg was only identifying the content of a document; she did not testify that HACM applied the shorter two-week reporting rule to Coe or to anyone else. *Document 13*, at p. 38 l. 19 - p. 39 l. 9.

The hearing examiner applied the correct administrative standard and based his decision on Coe's *admitted* infractions. Coe testified that information she provided during her 2008

---

[1]  Document 22 is the Defendant's Proposed Findings of Fact.

4

Case 2:14-cv-00022-LA   Filed 12/19/14   Page 4 of 16   Document 38

annual recertification meeting was not correct, acknowledging that she completely failed to report income from one of her employers. *Document 22*, at ¶¶ 74, 78. Coe also testified that, during her 2009 annual recertification meeting, a HACM employee pointed out to Coe that she had not reported the income she'd received from employers "Hatch" and "UMOS," and that Coe understood her failure was a significant rule violation. *Document 22*, at ¶ 82.

During Coe's first informal hearing, Coe described her interaction with a HACM employee, and stated "[w]hen we sat in that meeting, if she went through my tax forms…she said, Ms. Coe did you know that you did not report that income?...I said, yes,…it did slip my mind not to send that paperwork in. I will admit that." *Document 22*, at ¶ 80. Coe now wishes to pretend that she ever acknowledged her failure to report income. It is disingenuous, at best, for Coe to argue there is an ambiguity in the application of a 15 business-day rule vs. a two-week rule when, in fact, Coe failed to report income *at all*.

On April 19, 2010, Coe also met with HACM employees. *Document 19*, at ¶ 11; *Document 22*, at ¶ 23. During that meeting, Coe again acknowledged that she failed to report income from several of her past employers. *Document 22*, at ¶¶ 24-27, 65.

In addition to a complete failure to report income from several employers, Coe also failed to timely report income she had earned from "Precious Transit." *Document 22*, at ¶¶ 26, 66. Coe began employment with Precious Transit on February 17, 2009. *Document 11*, at p. 4. Coe did not report her income from Precious Transit until shortly before her April 7, 2009, annual recertification meeting. *Document 22*, at ¶ 26, 66.

Coe also attempts to argue that her failure to report income can be ignored if this court finds that it was "temporary income" that would not have affected her benefit. *Document 29*, at

5

p. 16. Coe asserts that she could not have violated program rules because most or all of the income she failed to report fell under the category of "temporary income," and was to have been excluded from relevant subsidy calculations anyway. It is the participants' responsibility to report their income, not to decide for HACM which income it considers relevant to subsidy calculation. HACM requires that participants report <u>all</u> income. After income is reported, it becomes HACM's responsibility to determine whether the reported income should factor into the calculation of rent subsidy levels. *Document 37*, at ¶ 4. HACM cannot evaluate income that participants fail to report. Coe cannot make a legally responsible argument that it was properly her decision to withhold reporting income because she had unilaterally determined it met the federal definition of income that would not be used in her benefit calculation.

Coe also suggests that HACM's income reporting rule is ambiguous about when the 15 business-day time period commences. *Document 29*, at pp. 15-16. Here, again, Coe's argument is immaterial because Coe "indisputably" failed to report income from multiple employers. *Document 11-2*, at p. 108. The hearing examiner held that the plain language of the rule required her to report the change within 15 business days of her first date of employment. *Id.,* at p. 109. The rule states that the change be reported "from the date the change occurs". *Document 11*, at p. 3. However, Coe's feigned confusion about when the 15 business-day requirement commenced became immaterial upon the hearing examiner's finding that she failed to report most of her income at all.

Coe disputes the hearing examiner's finding, claiming that, in fact, she provided accurate income information during her annual recertification meetings. *Document 29*, at p. 17. Coe's testimony shows otherwise. Coe herself testified that she failed to disclose income from several

6

employers during those recertification meetings. *Document 22*, at ¶¶ 74, 78, 80, 82. Coe was asked – and she answered: "Ms. Coe did you know that you did not report that income?...I said, yes,…it did slip my mind not to send that paperwork in. I will admit that." *Id.*, at ¶ 80.

Finally, Coe's contention that she cannot be terminated for violating a local reporting rule is an obvious misinterpretation of the federal regulations, HACM's administrative plan, and federal housing voucher requirements. Coe had a "family obligation" to report changes to her income and to her household composition. Coe failed to do so. HACM need not show that Coe fraudulently failed to report income, or fraudulently failed to report her household composition, the failures themselves were adequate bases for termination. Under the controlling legal standard, violation of a family obligation is grounds to terminate participation.

<u>The foundation of Coe's due process claim is based upon an incorrect legal theory.</u>

Coe argues that HACM's 15 business-day deadline to report interim income changes rises to the level of a due process violation. Coe's allegation necessarily assumes that the local reporting rule is a stand-alone rule that lacks support under the federal regulations and/or HACM's administrative plan. Coe's failure to report her income wasn't merely a violation of a local reporting rule; it was a failure to complete an enumerated "family obligation."

Federal regulations require that HACM adopt and implement local rules to ensure that income is timely reported, such that the benefits program is properly administered. *24 C.F.R. § 982.516(c)*("[t]he PHA must adopt policies prescribing when an under what conditions the family must report a change in income or composition").

In turn, under 24 C.F.R. § 982.516(c), the policies that PHA's adopt must accomplish the requirements of 24 C.F.R. § 982.551 and 24 C.F.R. § 982.552 (c)(1)(i), that rent assistance

7

benefits be terminated if a participant violates any "family obligation."

24 C.F.R. § 982.551 lists numerous family obligations. Pertinent to this case is the family obligation that a participant supply requested information regarding income and household composition that can be used for interim or regularly scheduled examinations.

Section 18.2 of HACM's administrative plan states that "[f]amilies are required to report any increase or decrease in income and in allowable expenses in writing between annual reexaminations." *Document 23-1*, at p. 68. The same section notes that these changes must be reported within 15 business days and a failure to do so can result in a family's termination. *Id.*

Section 21.0 of the administrative plan holds that someone can be terminated if the family violates "any family obligation under the program." *Id.,* at p. 76. Coe's housing voucher advised her of this same information. The voucher has a section titled, "Obligations of the Family." *Document 11-1*, at p. 96. Under this section a family must supply the PHA with information used in a regularly scheduled reexamination or interim reexamination of family income and composition. *Id.*

In sum, the 15 business-day income reporting rule is a tool that HACM uses to ensure that participants report interim income changes as required by the federal regulations, HACM's administrative plan, and the federal housing voucher. Local income reporting requirements are mandatory under the federal regulations (24 C.F.R. § 982.516(c)), and federal and state courts have consistently upheld their enforceability. *Basham v. Freda*, 805 F.Supp. 930 (M.D. Fla. 1992); *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790 (Iowa 2011); *Frey v. New York City Dept. of Hous. Preservation and Development*, 95 A.D.3d 613 (N.Y., 2012); 79 A.D.3d 603 (N.Y., 2010); *Peterson v. Washington Cnty. Hous. & Redevelopment Auth.*, 805

N.W.2d 558 (Minn. 2011).

Coe's due process claim must be dismissed because she possessed a viable state law remedy.

Coe's civil rights claim is now based exclusively upon an alleged due process violation. *Document 1*, at p. 10 (¶ 26)("HACM terminated Ms. Coe's participation…without due process of law…"). However, the United States Supreme Court has ruled that when there is an adequate state remedy to a due process deprivation, relief is not available under 42 U.S.C. §1983. *Nat'l Private Truck Council, Inc., v. Oklahoma Tax Comm'n*, 515 U.S. 582 (1995).

Even before the *Nat'l Private Truck* decision, the Wisconsin Supreme Court had arrived at the same conclusion. In *Enright v. Bd. of Sch. Dir. of the City of Milwaukee*, 118 Wis. 2d 236, 346 N.W.2d 771 (1984), the court concluded that the existence of an adequate state remedy precluded a §1983 action. The *Enright* court noted "that although the state remedies may not provide all the relief which may have been available if the party could have proceeded under sec. 1983, this does not mean that the state remedies are inadequate to satisfy the requirements of due process." *Id.,* 118 Wis. 2d at 256.

The *Enright* holding was expanded in *Weber v. City of Cedarburg*, 129 Wis. 2d 57, 384 N.W.2d 333 (1986). The *Weber* court stated "[w]e therefore hold that a person does not sustain a deprivation of due process of law when that person suffers a loss of a property or liberty interest as a result of an intentional tort of a state employee acting under color of law, provided that a meaningful post deprivation remedy is available to the person." *Id.,* 129 Wis. 2d at 76.

As a matter of law, certiorari review has been held to be an "adequate post-deprivation remedy." *Irby v. Macht,* 184 Wis. 2d 831, 843, 522 N.W. 2d 9 (1994); *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 549-50, 185 N.W.2d 306 (1971); *Thorp v. Town of Lebanon*, 2000 WI 60,

9

¶ 43, 235 Wis. 2d 610, 612 N.W. 2d 59. In this case, state law certiorari, acknowledged as adequate by both state and federal courts, precludes Coe from pursuing her claim under §1983.

<u>Coe's civil rights claim also fails to meet the *Monell* standard.</u>

The Supreme Court in *Monell* established the framework for a litigant to bring a civil rights claim against a governmental entity. Within the decision the Court held that a litigant can impose "liability on a government that, under color of some official policy, 'causes' an <u>employee</u> to violate another's constitutional rights." *Monell v. Dept. of Social Serv. of the City of New York*, 436 U.S. 658, 692 (1978)(emphasis added).

*Monell* makes clear that a governmental employee must cause the Constitutional deprivation. That requirement is not satisfied in this lawsuit. Coe claims that the hearing examiner's decision created the unlawful termination of her federal rent assistance. Coe does not dispute that the hearing examiner in this case was not an employee of HACM. The hearing examiner was solely responsible for resolving the evidentiary disputes that preceded the administrative hearing, conducting the hearing itself, ruling on objections, deciding what evidence to receive, reviewing post-hearing briefs, and ultimately issuing the decision that found that Coe had violated the charged rules and that termination from the program was appropriate. Coe's argument fails because a HACM employee did not terminate her.

Coe tries to get around this undisputed fact by citing a letter from HACM's counsel. *Document 29*, at p. 24. Coe's reliance upon this letter is misplaced because the letter's purpose was solely to deny her request for reconsideration of the hearing examiner's final decision.

10

### III. STATE LAW CERTIORARI REVIEW

Coe also disputes that the hearing examiner's decision must be upheld under concurrent state law certiorari review. *Document 29*, at pp. 24-30. Coe argues that: (1) the decision is based on grounds not contained in the notice; (2) the decision is based on grounds not permitted by federal law; (3) there was insufficient evidence to support the finding that Coe had unauthorized household members; (4) there was insufficient evidence to support the finding that Coe committed fraud; (5) and the decision was not timely issued. *Id.*

<u>The hearing examiner's decision was based solely upon the alleged rule violations set forth in the notice.</u>

Coe asserts that the notice HACM issued questioning her benefits and offering her a hearing was "silent" on the allegation that she had failed to report her household composition. *Document 29*, at pp. 26-27. Coe suggests that she must have been terminated for occupancy standards or failing to report household members' income. The notice told her otherwise.

The Wisconsin Court of Appeals has identified the information that must be set forth in a rent assistance notice challenging benefits. In *Driver v. Hous. Auth. of Racine County*, 2006 WI App 42, ¶ 1, 289 Wis. 2d 727, 713 N.W.2d 670, the Court of Appeals determined that a legally sufficient notice must contain information on "who" committed a rule violation, "what" rule was violated, and "when" the rule violation occurred.[2]

HACM's notice in this case complies with the *Driver* requirements; it cited both the federal regulations concerning fraud and the family obligation to report household composition changes. *Document 36*, at ¶¶ 1, 4-5, 17-21. The notice contained a factual section that explained

---

[2] The federal regulations address what must be contained in a notice. The regulations require a public housing authority issue a notice that "contains a brief statement of reasons for the decision." *24 C.F.R. § 982.555(c)(2)(i).*

11

how Coe violated the cited rules, and memorialized the information that Coe provided to HACM staff members. Enclosures were also served with the notice, and provided Coe with numerous documents that supported the contention that Coe had violated the reporting rule concerning family composition. *Id.,* at ¶¶ 27-28.

### The hearing examiner applied the proper legal standard.

Coe argues that the hearing examiner's decision must be revered because it purportedly was based on a ground not permitted by federal law. *Document 29*, at pp. 26-27. Specifically, Coe reiterates her argument that her tardy reporting of the income she received from "Precious Transit" was insufficient under federal regulations to terminate her participation. However, Coe's assertion ignores her several admissions that she failed to report income from numerous employers – not simply "Precious Transit." *Document 22*, at ¶¶ 25-27, 65-66, 74, 78-80. The hearing examiner found that she "indisputably" failed to follow income-reporting requirements. *Id.,* at ¶¶ 99-100, 102. A failure to report income is a permissible ground to terminate rent assistance. *24 C.F.R. § 982.551 - 982.552*.

Coe also argues that the hearing examiner failed to consider her mitigation evidence. *Document 29*, at p. 27. That is a hollow argument because Coe has steadfastly denied violating program rules. Coe never introduced any mitigation evidence.

### The hearing examiner's decision was supported by substantial evidence.

Coe next argues that there was insufficient evidence to support the hearing examiner's finding that she had unauthorized people living in her rent assisted home. *Document 29*, at pp. 27-28. Coe surmises that the hearing examiner's conclusion that Danta Portis lived in her house was based upon only a municipal court report and "hand written notes" taken during the April

12

19, 2010, meeting. *Document 29*, at pp. 27-28. Coe suggests that *Gehin v. Wis. Group Ins. Bd.*, 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 572, applies to discount that "hearsay."

Coe misreads the hearing examiner's decision. The determination that Danta Portis lived with Coe was based on testimonial evidence. The hearing examiner concluded that Loberg's testimony credibly recounted what Coe had said during the April 19, 2010, meeting in which Coe admitted allowing Portis to move into her home in January. The hearing examiner also evaluated Coe's testimony denying that she had conceded Portis had moved in with her. After weighing the witnesses' credibility, the hearing examiner found that Coe, and her witnesses, "lacked credibility", offered "inconsistent testimony", and were not being truthful. *Document 11-2*, at p. 110. The testimony removes this case from the considerations examined in *Gehin*.

Additionally, the administrative decision was not based upon the type of *uncorroborated* hearsay cautioned against in *Gehin*. Coe's statements qualify as "admissions by a party opponent," and are not hearsay. *Wis. Stat. § 908.01(4)(b)(1)*.

Overall, Coe's argument against HACM's certiorari motion is little more than a request that this court re-weigh the administrative evidence. The court must decline Coe's invitation. Wisconsin courts uniformly adhere to the standard that "it is the function of the hearing examiner, not the reviewing court, to determine the credibility of witnesses and the weight of the evidence." *Kitten v. State Dept. of Workforce Development*, 2001 WI App 218, ¶ 20, 247 Wis. 2d 661, 634 N.W.2d 583; *Eastex Packaging Co. v. DILHR*, 89 Wis. 2d 739, 745, 279 N.W.2d 248 (1979). A court considers only whether there is evidence that the hearing examiner weighed the evidence, and that there is any reasonable view of the evidence that supports the decision. The court does not substitute its opinion, even if it feels that the evidence may have led it to a

Case 2:14-cv-00022-LA Filed 12/19/14 Page 13 of 16 Document 38

different conclusion. *Kitten*, 2001 WI App 218, ¶ 20; *L & H Wrecking Co v. LIRC*, 114 Wis. 2d 504, 508, 339 N.W.2d 34 (Ct. App. 1983).

Relatedly, Coe submits that the hearing examiner should not have based his decision on Loberg's testimony. *Document 29*, at pp. 28-29. Coe argues that inconsistencies in Loberg's testimony made her an incredible witness. Again, Coe improperly asks that this court weigh the evidence, rather than review whether the evidence was considered below. The hearing examiner is the person vested with the authority to determine evidentiary weight and witness credibility. The hearing examiner found Loberg credible. *Document 11-2*, at p. 110. The hearing examiner did not find Coe credible or truthful. *Id.* Those findings show that the hearing examiner considered the evidence.[3] On certiorari review, the court's inquiry goes no further.

<u>Substantial evidence exists to support the hearing examiner's finding of fraud.</u>

Coe argues that there is not enough evidence to support a finding that she committed fraud. *Document 29*, at p. 29. Coe offers no substantive argument. She merely suggests that "HACM ignores the law." *Id.* Termination for failing to report household composition changes is permissible under federal law. The hearing examiner found Coe's failure to have been intentional, and his decision was based upon the evidence before him and upon witness credibility. Coe admitted that she allowed people to live in her house; the hearing examiner found that "five months (the time the unauthorized people were impermissibly living in the house) was a long enough period of time to infer fraud on Ms. Coe's part by not reporting the changes in her family composition." *Document 11-2*, at p. 110.

---

[3] Significantly, the hearing examiner from the first informal hearing reached the same conclusions. That hearing examiner held that neither Coe nor her witnesses "provided any compelling testimony", that Coe's accusation that Loberg lied was "ludicrous", and that Coe's witnesses "did not seem credible." *Document 36*, at ¶¶ 36-38.

14

<u>Coe's counsel waived the 14 day time period to issue a hearing decision.</u>

Coe argues that the decision was not issued within the required time parameters. *Document 29*, at pp. 29-30. However her argument ignores the reality of what occurred. When all parties were done presenting evidence, the hearing examiner acknowledged that he would issue a decision within 14 days. Coe's counsel waived the 14 day time requirement, asking instead for a briefing schedule – stating "we - - we can wait." *Document 22*, at ¶¶ 90-92. Not only did Coe waive the 14-day decision deadline, but it is undisputed that Coe has not been prejudiced by the timing of the decision. Throughout the duration of this litigation Coe received her monthly rent assistance payments, and she was not damaged. *Document 22*, at ¶¶ 124-126.

## **CONCLUSION**

For the reasons stated herein it is respectfully requested that the court grant the defendant's motion for summary judgment, dismiss all of plaintiff's claims and cause of action, and award it all costs and fees incurred in defense of this lawsuit.

Dated this 19th day of December, 2014.

        PIPER, SCHMIDT &WIRTH
        Attorneys for Housing Authority
        of the City of Milwaukee

        /s/ Matthew L. Granitz
        JOSEPH M. WIRTH
        State Bar No.: 1012080
        MATTHEW L. GRANITZ
        State Bar No.: 1059480

Piper, Schmidt & Wirth
Fourth Floor - The Jackson Building
732 North Jackson Street
Milwaukee, WI 53202-4620
Telephone: (414) 225-4060
Facsimile: (414) 271-6196

jmw@piperschmidt.com
mlg@piperschmidt.com