# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**TAKIA COE,**
        **Plaintiff,**

v.                                         Case No. 14-cv-0022

**HOUSING AUTHORITY OF THE CITY**
**OF MILWAUKEE,**
        **Defendant.**

_____

## **DECISION AND ORDER**

Plaintiff Takia Coe brings this Section 1983 action and a common law claim for certiorari review alleging that the decision of the defendant, the Housing Authority of the City of Milwaukee ("HACM"), to terminate her federal rent assistance benefits was unlawful. Before me now are a motion to dismiss for lack of standing and cross motions for summary judgment.

## **I. Background**

Plaintiff has participated in the federal rent assistance program, commonly referred to as Section 8, for approximately 15 years. Local housing authorities administer the Section 8 program. *See* 24 C.F.R. § 982.51(a). Defendant administers the program in Milwaukee. In 2009 and 2010, defendant discovered that plaintiff had earned income from sources she had not disclosed and investigated whether she had reported all of her income as required. In 2010, defendant received a report that an unauthorized person was living with plaintiff and investigated that allegation. In April 2010, defendant's employee, Jacquelyn Loberg, met with plaintiff to discuss plaintiff's compliance with program rules. Soon after, defendant issued a notice to plaintiff questioning her continued eligibility for the

Section 8 program and offering plaintiff an informal hearing. Pursuant to plaintiff's request, defendant held a hearing, and on September 2, 2010 the hearing examiner issued a written decision terminating plaintiff from the program.

Plaintiff challenged her termination, and a magistrate judge vacated it, finding that defendant's notice to plaintiff was deficient. *See Coe. v. Hous. Auth. of the City of Milwaukee*, No. 10-CV-915 (E.D. Wis.). Subsequently, defendant held another hearing, and on November 21, 2013, the hearing examiner again terminated plaintiff from the Section 8 program, concluding (1) that plaintiff had violated defendant's rule that participants must report income changes within 15 business days and (2) that plaintiff had failed to report several unauthorized household members and that this amounted to fraud.

## II. Discussion

### A. Standing

I asked the parties to brief an issue raised but not developed by defendant, whether plaintiff has standing to bring her § 1983 claims inasmuch as she moved to West Allis in 2013 and "ported"[1] her Section 8 benefits to West Allis's program. To have standing, a plaintiff must allege (1) a "personal injury" or injury in fact, (2) that the injury is "fairly traceable to the defendant's allegedly unlawful conduct," and (3) that it is "likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). An injury in fact is one "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

---

[1] Section 8 vouchers are "portable," meaning a participant approved for rent assistance by one local housing authority may use the voucher in another location. *See* 42 U.S.C. § 1437f(r)(1); 24 C.F.R. § 982.353(b).

2

528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Plaintiff asserts two injuries which she argues are sufficient to establish standing: (1) that her termination of benefits will likely prevent her from moving to another jurisdiction because local housing authorities may deny her Section 8 assistance based on such termination, and (2) that the termination prevents her from obtaining assistance in Milwaukee. Defendant argues that these injuries are speculative because plaintiff lives in West Allis and has not shown that she intends to move to Milwaukee or elsewhere or that another housing authority would deny her benefits. Defendant also argues that plaintiff's injuries are not redressable because relief will not affect plaintiff's current housing situation.

I conclude that plaintiff has an actual, ongoing injury that is sufficient to confer standing. This is so because the termination has caused plaintiff harm; it affected her housing options, and it placed a "black mark" on her in the Section 8 housing context which, if not removed, is likely to have ongoing, adverse effects. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (noting that a plaintiff who shows "continuing, present adverse affects" has an injury in fact). This injury is concrete; it is also particularized because it specifically affected plaintiff; and it is actual and non-speculative because if not reversed, will be attached to her going forward. Such an injury is similar to reputational harm, which is a cognizable injury in fact. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015) ("Reputational injury . . . is sufficient to establish an injury-in-fact."); *Nat'l Collegiate Athletic Ass'n v. Governor of N.J*, 730 F.3d 208, 220 (3d Cir. 2013) ("As a matter of law, reputational harm is a cognizable injury in fact."); *see also Lutheran Church-*

3

*Missouri Synod v. F.C.C.*, 141 F.3d 344, 349 (D.C. Cir. 1998) (finding that a church had standing to challenge the Federal Communication Commission's ("FCC") administrative decision that the church violated equal employment opportunity regulations because the FCC's decision constituted "a black mark on the [c]hurch's previously spotless licensing record and could affect its chances of license renewal down the road").

*Lujan* is not to the contrary. It distinguishes cases where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack thereof) of *someone else*," and situations like the present case where "the plaintiff is himself an object of the action (or foregone action) at issue." 504 U.S. at 561–62. In the former category of cases, "much more is needed" in order to establish an injury in fact, whereas in the latter, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* In the present case, plaintiff has a personal stake in the outcome, and this stake is sufficient "to assure that concrete adverseness" between the parties exists. *Flast v. Cohen*, 392 U.S. 83, 99 (1968). Further, plaintiff's injury was caused by defendant's termination decision and is redressable by the relief sought, reversal of such decision. If plaintiff achieves relief, the effect of the termination decision on her housing opportunities will be removed.

**B. Merits**

I may grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, I consider all evidence submitted by the parties and draw all inferences in favor of the non-moving party. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1. **§ 1983 Claims**

Plaintiff alleges that defendant violated federal law by terminating her Section 8 benefits for unauthorized reasons and violated due process by providing her with inadequate notice. Defendant is a municipality and thus may be found liable under 42 U.S.C. § 1983 only if it deprived plaintiff of rights as the result of its enforcement of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).

I first address plaintiff's claim that defendant terminated her benefits for reasons not authorized by federal law. Defendant is a public housing agency with the authority to administer the Section 8 program. 24 C.F.R. §§ 982.51, 982.52. Public housing agencies have "the maximum amount of responsibility and flexibility in program administration," 42 U.S.C. § 1437(a)(1)(c), and must establish a plan which outlines local administrative policies, 24 C.F.R. § 982.54. Defendant must also conduct annual reexaminations of active participants' family income and household composition and may conduct interim reexaminations at any time. § 982.516(a)-(b). Defendant's administrative plan must provide procedures for conducting interim reexaminations of family income and household composition, § 982.54(d)(18), and "policies prescribing when and under what conditions the family must report a change in family income or composition." § 982.516(c).

Section 18.2 of defendant's administrative plan entitled "Interim Reexaminations" requires participants to:

> report any change in income . . . within fifteen (15) business days from the date the change occurs. Failure to do so may result in the family having to pay moneys back to [HACM] and/or the family's termination from the program. [HACM] will take timely action to process the interim reexamination and recalculate the family share of rent.

5

> Families are also required to report changes in family composition to [HACM] between regular reexaminations. These changes will trigger an interim reexamination . . . .

LaRosa Aff. Ex. 1 at 68 (ECF No. 23-1).[2]

Defendant may terminate a participant's benefits for various reasons, including fraud in connection with the Section 8 program, 24 C.F.R. § 982.552(c)(1)(iv), or a violation of a family obligation, § 982.552(c)(1)(i) such as the obligation to "supply any information requested by [defendant] or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition," § 982.551(b)(2).

As stated, defendant terminated plaintiff's benefits both for violating the 15-day income reporting rule and for failing to report unauthorized household members. Plaintiff contends that neither of these grounds was authorized by federal law. Plaintiff argues that defendant lacked authority to terminate her benefits for violation of a rule established by a local housing agency that was not part of a reexamination. However, as stated, federal law conferred on defendant the responsibility to develop procedures for conducting interim reexaminations, and defendant had broad flexibility in exercising this responsibility. Additionally, defendant's administrative plan makes clear that the 15-day reporting rule is part of the interim reexamination process. The plan lists the rule under the section entitled "Interim Reexamination," and the rule unequivocally states that a change in income triggers

---

[2] Plaintiff contends that in some HACM documents, the 15-day income reporting rule is stated as a "two week" rule and in others as a "15 business day" rule. Plaintiff also contends that in some documents the rule requires reporting of an increase in income and in others a change. For purposes of the present case, these discrepancies are immaterial because the hearing examiner applied the most liberal construction, and plaintiff failed to comply with any version of the rule.

6

an interim reexamination. LaRosa Aff. Ex. 1 at 68 (ECF No. 23-1) (after a report of a change in income, defendant "will take timely action to process the interim reexamination and recalculate the family share of rent"). Further, plaintiff concedes that failure to report information in conjunction with an interim reexamination constitutes a failure to comply with a family obligation under both federal regulations, *see* 24 C.F.R. § 982.551(b)(2), and defendant's administrative plan, *see* LaRosa Aff. Ex. 1 at 11–12 (ECF No. 23-1). Thus, plaintiff's failure to report a change in income within 15 business days of the change violated her obligation to supply information required by defendant for use in an interim reexamination and was a permissible ground for termination of her benefits under 24 C.F.R. § 982.552(c)(1)(i). Thus, when plaintiff violated the 15-day income reporting rule defendant was authorized to terminate her benefits, and defendant is entitled to summary judgment on this claim.

Because I have concluded that one of defendant's reasons for its termination decision complied with federal law, I need not address plaintiff's other arguments because even if another of defendant's reasons for termination violated federal law, plaintiff could show no injury given the fact that defendant had at least one lawful reason to terminate. However, to be thorough, I will also address defendant's second ground for terminating plaintiff's benefits, plaintiff's failure to report additional household members, which I conclude was also authorized. Plaintiff assails the adequacy of the examiner's finding of fraud, but this does not undermine the examiner's conclusion that plaintiff "failed to report changes in her family composition," Hr'g R. Part 2 at 109 (ECF No. 11-2). The examiner explicitly found that plaintiff failed to report household composition changes, and this alone was a permissible reason to terminate plaintiff's benefits. As stated, defendant was

7

authorized to terminate plaintiff for failure to comply with a family obligation, and one such obligation was to supply the information requested in connection with an interim reexamination. Under the interim reexamination section of its plan, defendant required participants to report changes in family composition and explicitly stated that such "changes will trigger an interim reexamination." The plan specifically provided as an example of when reporting was required the situation where "[a] member has been added to the family." LaRosa Aff. Ex. 1 at 68–69 (ECF No. 23-1).[3] Thus, regardless of whether the fraud finding was justified, the examiner's determination that plaintiff failed to report a change in household composition was a permissible ground, in and of itself, for terminating plaintiff's benefits. Thus, defendant is also entitled to summary judgment on this claim.

Plaintiff also claims that defendant violated her due process rights by terminating her benefits for reasons not stated in the notice she received. Plaintiff, however, concedes that she has no evidence that this alleged deficiency was part of a custom or practice as required by *Monell*. Thus, defendant is entitled to summary judgment on this claim as well.

**2. Certiorari Review**

Plaintiff also asks me to review the examiner's termination decision under state common law certiorari review. Such review "test[s] the validity of a decision rendered by . . . an administrative agency." *Ottman v. Town of Primrose*, 332 Wis. 2d 3, 22 (2011). On certiorari, I review the administrative record and may not consider additional evidence. *Id.* I determine only whether defendant (1) kept within its jurisdiction; (2) proceeded on a correct theory of law; (3) terminated plaintiff's benefits in a manner that was oppressive,

---

[3] Notice of this obligation was also included in other documents including plaintiff's housing voucher.

8

or unreasonable; and (4) based the decision on evidence reasonably used to make such a determination. *Id.* at 22–23. I may not weigh the evidence or determine the credibility of the witnesses, *State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 652 (1979), and I may not substitute my discretion for the examiner's, *State ex rel. Ziervogel v. Washington Cty. Bd. of Adjustment*, 269 Wis. 2d 549, 559 (2004). Finally, I must uphold a decision if it is supported by substantial evidence. *CBS, Inc. v. Labor & Indus. Review Comm'n*, 219 Wis. 2d 564, 568 n.4 (1998).

Plaintiff argues that terminating her benefits was unlawful for a number of reasons. I address each in turn. First, plaintiff argues that her benefits were terminated based on unauthorized grounds. I reject this argument for the same reasons I rejected it in the § 1983 context. Plaintiff's violation of the 15-day reporting rule constituted a failure to supply information in connection with an interim reexamination and was therefore a violation of a family obligation, which is a permissible ground for termination. Plaintiff makes the related argument that the examiner failed to consider mitigating factors and the circumstances of her family. This contention also fails. The examiner considered mitigating circumstances, such as the temporary nature of plaintiff's unreported income and the fact that plaintiff did not hide the increase in income at her annual reexamination.

Plaintiff also argues that her benefits should not have been terminated on the ground that she failed to report changes in household composition because she did not receive notice as to what specific rule she violated. Defendant was obligated to provide plaintiff with "a brief statement of reasons for the decision," 24 C.F.R. § 982.555(c)(2)(i), including specifying "*who* had violated *what* specific obligation and *when* the violation

9

occurred" and offering "a rudimentary description of the incidents giving rise to the charges." *Driver v. Hous. Auth. of Racine Cty.*, 289 Wis. 2d 727, 732 (Ct. App. 2006).

In the present case, defendant satisfied this requirement. *See* Hr'g R. Part 1 at 5 (ECF No. 11) ("[Y]ou failed to follow the Program's procedures regarding adding new household members to your lease."). The notice specifies the charged violations, quoting 24 C.F.R. § 982.552(c)(1)(iv)'s grant of authority to terminate participation based on fraud, § 982.551(b)(2)'s requirement that a participant supply information requested in connection with an interim reexamination, as well as a participant's obligation to report changes in household composition. Hr'g R. Part 1 at 3 (ECF No. 11). The notice also contains detailed allegations, including dates, a summary of defendant's evidence, and the names of the alleged unauthorized household members. *Id.* at 5. The notice states:

> you failed to follow the Program's procedures regarding adding new household members to your lease. You had multiple unauthorized household members that were residing in the unit that did not undergo a background check and did not have their income included in the monthly tenant portion that is based on household income. You also created an unsafe environment by allowing numerous people to reside in a unit that was too small for your actual household size.

*Id.* This was sufficient to put plaintiff on notice of the reasons defendant sought to terminate her participation in the Section 8 program.

Plaintiff also argues that the examiner's decision that she had unauthorized household members living with her was not based on substantial evidence. I disagree. The examiner found that plaintiff and her witnesses lacked credibility and credited testimony that plaintiff had previously acknowledged the presence of unauthorized household members. As discussed, I do not decide questions of credibility, nor do I weigh the evidence.

10

Plaintiff also argues that the examiner lacked substantial evidence to find that her failure to report changes in household composition was fraudulent. As discussed, I need not determine whether the examiner's fraud finding was supported because even without the fraud finding, the examiner's finding that plaintiff failed to report household composition changes, in and of itself, was a sufficient reason to terminate.

Even if the examiner's decision regarding household composition was flawed in some respect, any error was harmless. Defendant needed only one legitimate reason to terminate plaintiff's benefits and plaintiff's violation of the 15-day reporting rule was such a reason. *See Step Now Citizens Grp. v. Town of Utica Planning & Zoning Comm.*, 264 Wis. 2d 662 (Ct. App. 2003) (denying a petition for certiorari review where the record indicated that no one was prejudiced by the error); *State ex rel. Lomax v. Leik*, 154 Wis. 2d 735 (Ct. App. 1990) (applying the same common law certiorari standard and noting that a showing harmless error can defeat a certiorari review claim); *see also Clark v. Waupaca Cty. Bd. of Adjustment*, 186 Wis. 2d 300, 304 (Ct. App. 1994) (concluding that if a court concludes that any of an administrative agency's reasons for taking an action passes certiorari review, it should affirm even if other reasons were in error).

Finally, plaintiff argues that the examiner's decision should be overturned because it was untimely. 24 C.F.R. § 982.555(e)(6) requires defendant to provide its written termination decision "promptly" after an informal hearing. Defendant's administrative plan requires issuance of the decision "within 14 calendar days from the date of the hearing." LaRosa Aff. Ex. 1 at 86 (ECF No. 23-1). In the present case, the hearing concluded on January 10, 2013, and the examiner stated, "It's my understanding that I have to issue a

11

written decision within 14 days." Hr'g Tr. at 329 (ECF No. 13). Plaintiff's attorney responded, "We can wait, and I'd like the opportunity to submit a written brief . . . to cover the federal regulations and how I think the Housing Authority has a series of policies that aren't consistent with federal regulations." *Id.* at 329–30. The final brief on the issue was submitted April 8, 2013, and the examiner issued his decision on November 21, 2013.

I conclude that when plaintiff's counsel stated "we can wait" in response to the examiner's mention of the 14-day rule, plaintiff waived her right to have a written decision within 14 days of the informal hearing. Plaintiff requested the delay so she could submit a brief with supplemental legal argument for the examiner to consider. Further, plaintiff was not prejudiced by the delay because she continued to receive her rent subsidy.

For the foregoing reasons, I decline to overturn the examiner's decision and grant summary judgment on plaintiff's certiorari claim in favor of defendants.

## II. Conclusion

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment (ECF No. 20) is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss (ECF No. 44) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of February, 2016.

        s/ Lynn Adelman

        _____
        LYNN ADELMAN
        District Judge